# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>                 Plaintiff,<br><br>v.<br><br>CHRISTIAN CLEWS,<br><br>                 Defendant. | Case No.:  17-CR-145 DMS<br><br>**ORDER ON REQUEST FOR INDICATIVE RULING AND DENYING MOTION FOR SENTENCE MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

Pending before the Court is Defendant Christian Clews's request for an indicative ruling on a motion for sentence modification under the First Step Act.  Plaintiff United States of America filed a response and Defendant filed a reply.  Defendant also filed supplemental briefing.  For the following reasons, Defendant's motion is denied.

## I.

## BACKGROUND

Defendant is currently incarcerated at FCI Seagoville, following his convictions for distribution of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and possession of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).  (Judgment, ECF No. 104.)  His crimes include distributing child pornography depicting children being subjected to bondage, sadism, and bestiality, (*id.* at ¶ 177), and collecting images of the same dating back to 2001.

(*Id.* at ¶¶ 6, 13.)  Defendant also produced child pornography on at least two occasions with two different minors.

Prior to incarceration, Defendant lived on a ranch in San Diego, California.  The Amended Pre-Sentence Report details allegations against Defendant of sexual assault and harassment of minors at the ranch over many years.  (*See, e.g.*, APSR at ¶¶17-28.)  Considering Defendant's conduct, personal history and characteristics, and other relevant sentencing factors, the Court originally sentenced Defendant to 210 months in custody (Judgment, ECF No. 104), but later re-sentenced Defendant to 168 months after he retained new counsel and successfully challenged some of the allegations leveled against him by the Government and in the presentence report.  (Amended Judgment, ECF No. 158.)  On June 21, 2019, Defendant filed a notice of appeal of his sentence to the Ninth Circuit.  His opening brief is due on July 22, 2020.  (ECF No. 162.)

Defendant is 55-years old and suffers from chronic obstructive pulmonary disease (COPD), hypertension, and has a history of diabetes.  (Def's Mot., ECF No. 174, at 1.)  These conditions are considered by the Centers for Disease Control and Prevention ("CDC") to increase an individual's risk for severe illness from COVID-19.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, *Groups at Higher Risk for Serious Illness*, http://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.  As of June 28, 2020, the Bureau of Prisons ("BOP") confirmed that 46 inmates have tested positive for COVID-19 at FCI Seagoville.  (Def's Third Supp. Doc, ECF No. 179, at 1.)  Defendant is currently scheduled to be released on December 31, 2029.

Due to the spread of COVID-19 in his facility and his underlying health conditions, Defendant now requests that the Court modify his sentence under 18 U.S.C. § 3582(c) and convert his 168-month sentence to time-served, with a term of supervised release to include home detention as a condition.  Because his appeal is pending before the Ninth Circuit, Defendant requests the Court make an indicative ruling under Rule 37(a) of the Federal Rules of Criminal Procedure.  The Court respectfully declines to do so and instead denies the motion.

# II.

## DISCUSSION

### A. Federal Rule of Criminal Procedure 37(a)

Federal Rule of Criminal Procedure 37(a) provides that where a timely motion is filed with the district court while an appeal is pending the court may: "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue."  As noted, Defendant requests that the Court issue an indicative ruling under the third option and find that his motion raises substantial issues.  If the third option is employed, "[t]he movant must promptly notify the circuit clerk" and invite the Ninth Circuit to remand the case and allow the district to decide the motion.  *See* Fed. R. Crim. P. 37(b), (c).  However, if the court concludes the defendant is not entitled to relief, as here, it may deny the motion under Rule 37(a)(2).  *See United States v. Furaha*, --- F. Supp. 3d ---, 2020 WL 2315640, at *3 (N.D. Cal. May 8, 2020).

### B. 18 U.S.C. § 3582(c)

In general, a court may not modify a sentence once imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  The First Step Act ("FSA") now permits a court to modify a prison sentence.  *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018).  Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the Bureau of Prison ("BOP") process.

Section 3582(c) of Title 18 of the United States Code provides that a district "court may not modify a term of imprisonment once it has been imposed except … upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  A defendant may bring a § 3582(c) motion only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

18 U.S.C. § 3582(c)(1)(A).  Administrative exhaustion is therefore a prerequisite to filing the motion in district court, and "[e]xhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it."  *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted).  Thereafter, the Court may consider the applicable factors set out in § 3553(a) and determine whether "extraordinary and compelling reasons" warrant a sentence reduction consistent with "applicable policy statements issued by the Sentencing Commission."

Here, Defendant filed a request for sentence modification with the Warden on March 25, 2020.  (App. 1 to Def's Mot.)  The request was denied on April 10, 2020.  (App. 2 to Def's Mot.)  Defendant then filed an administrative appeal on April 22, 2020, which was denied on May 13, 2020.  (App. 3-4 to Def's Mot.)  There is no dispute Defendant has exhausted his administrative remedies under § 3582(c)(1)(A) and the Court may address the motion.

The FSA allows a district court to modify a sentence and grant a reduction or release if it finds that "extraordinary and compelling reasons" warrant such relief, the relief complies with 18 U.S.C. § 3553(a), and the defendant "is not a danger to the safety of any other person or to the community[.]"  *See* 18 U.S.C. § 3582(c)(1)(A); United States Sentencing Guidelines ("U.S.S.G") § 1B1.13.  As the moving party, Defendant bears the burden of establishing he is eligible for a sentence reduction.  *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

1. Extraordinary and Compelling Reasons

Defendant argues he is eligible for sentence modification for extraordinary and compelling reasons because his underlying health conditions make him particularly vulnerable to COVID-19.  (Def's Mot. at 6.)  Defendant contends it is inevitable the number of positive cases at FCI Seagoville will continue to rise, thus placing his life in danger. (Def's Third Supp. Doc, ECF No. 179, at 1) (noting the number of confirmed cases for

COVID-19 at FCI Seagoville as of June 28, 2020 was 46, representing an increase of 42 cases over a three-day period).

A defendant may show that extraordinary and compelling reasons exist if he or she is "suffering from a serious physical or mental condition," among other conditions. *See* U.S.S.G § 1B1.13, cmt n.1(A)(i)–(ii).  Here, Defendant is 55-years old, and suffers from chronic obstructive pulmonary disease (COPD), hypertension, and has a history of diabetes—all comorbidities that increase the risks associated with COVID-19. (Def's Mot. at 1.)  While these conditions may not be terminal or serious on their own, they could be deadly when combined with COVID-19. *See United States v. Hendler*, No. 19-CR-1183 (DMS) (S.D. Cal. June 1, 2020) (finding COVID-19 pandemic relevant to analysis under the FSA where the defendant has a chronic medical condition that elevates the risk of serious illness or death).  The Government acknowledges that Defendant "presents a risk factor identified by the CDC as heightening the risk of severe injury or death were he to contract COVID-19," (Opp'n at 5), but contends his health conditions are well-controlled and FCI Seagoville is not experiencing an outbreak of COVID-19 cases.[1]  Given Defendant's supplemental filings and indication that an outbreak at the facility appears to be underway, the Court assumes Defendant has shown extraordinary and compelling reasons for compassionate release.  However, Defendant fails to meet his burden to demonstrate that he is not a danger to others or the community under § 3142(g) and that the § 3553(a) factors weigh in favor of release.

2. <u>Danger to Others or the Community</u>

Even where extraordinary and compelling reasons exist, the court must consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" U.S.S.G. § 1.B1.13(1)(A), (2) cmt. n. 1.  To make this assessment, the Court is directed to the factors set out in § 3142(g), including, among

---

[1] In response, Defense counsel notes they do not have all of Defendant's medical records. (Reply Br. at 1-3.)

17-CR-145 DMS

other things: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the person, including character, physical and mental condition, family ties, employment, financial resources, past conduct, criminal history, and drug and alcohol abuse; and (3) the nature and seriousness of the danger to any person or the community that release would impose.  These factors are addressed in turn and overlap with the § 3553(a) factors.

### a. Nature and Circumstances of the Offense Charged

The Government contends the nature and circumstances of the offense charged weigh against release, noting Defendant's crime involved the possession of over 47,000 images of child pornography, including "sadistic conduct and bestiality involving young children," as well as distribution of images of young children through his cellular phone. (Opp'n at 6.)  Moreover, the Government notes Defendant abused his position of authority at his family's ranch to sexually exploit minors who spent time there over the course of almost 25 years, including by producing child pornography with two different minors on two separate occasions. (*Id.* at 5-6.)

Indeed, unlike other instances in which this Court has granted compassionate release, Defendant's crimes and relevant conduct are very different. *See, e.g., United States v. Mondaca*, 2020 WL 1029024 at *4 (granting motion for compassionate release where defendant was convicted of non-violent drug offense for conspiracy to possess cocaine with intent to distribute).  Although Defendant contends the Government "ignore[s] the lengthy time he spent on pre-trial release without incident" and "implicitly suggests his life is not worth protecting," (Reply Br. at 3), neither of those arguments undercuts the disturbing nature of Defendant's crimes for possession and distribution of large volumes of sadistic child pornography images over many years.  Further, the undisputed relevant conduct attributed to Defendant includes *production* of child pornography with two different minors on two separate occasions.  That conduct reveals predation on the part of Defendant which raises significant public safety concerns.  The first factor weighs decidedly against releasing Defendant.

### b. History and Characteristics of the Person

"The history and characteristics of a defendant include his or her 'character, physical and mental condition, family ties, employment, financial resources, community ties, past conduct, criminal history, and drug and alcohol abuse.'" *Mondaca*, 2020 WL 1029024, at *4 (quoting *United States v. Spears*, 2019 WL 5190877, at *4 (D. Or. Oct. 15, 2019)). Defendant has not provided any evidence of his history and characteristics that weigh in favor of his release, aside from pointing to his satisfactory performance while on pre-trial supervision and model prisoner status with no disciplinary infractions while in custody. (Def's Mot. at 20.) These points are significant and are to be credited. Defendant also displayed genuine remorse and insight into the crimes he committed at his re-sentencing. Nevertheless, Defendant's history is deeply troubling. Defendant has not undergone sex offender treatment while in custody, let alone started it. (Opp'n at 7.) That treatment is essential to rehabilitation and fully evaluating Defendant's demonstrated tendency to prey on minor females. The second factor, therefore, weighs decidedly against releasing Defendant.

### c. Nature and Seriousness of Danger Posed by Release

Finally, Defendant contends there is little danger posed by his potential release because he was on pre-trial supervision for one year after his arrest without incident. (Def's Mot. at 20.) Moreover, Defendant notes if released, he would be placed on home detention with GPS monitoring, and thus would not pose a danger to others or the community. (*Id.*) The Government correctly points out that Defendant "proposes being released to the same residence, living with the same people, where he committed his offense conduct." (Opp'n at 7.)

Defendant argues the Court should follow *United States v. Curtis*, where the district court granted a sentencing modification for a defendant serving a life sentence for sex trafficking minors, finding that although the crimes committed were "heinous," the defendant's vulnerability to the spread of COVID-19 weighed in favor of changing the sentence to time-served. (Def's Mot. at 22) (citing *United States v. Curtis*, No. 03-CR-533

BAH, 2020 WL 1935543 (D.D.C. Apr. 22, 2020)).  *Curtis* is distinguishable.  There, the defendant had already served 17 years of a life sentence, suffered from multiple sclerosis, loss of 85% of his vision, was unable to walk, and required assistance with all aspects of daily living.  *Curtis*, 2020 WL 1935543, at *2.  As a result of those conditions, Curtis was confined to a bed or wheelchair.  As such, the court concluded that he was no longer a danger to any person or the community.  *Id.* at 5.

In contrast, there are no facts here indicating that Defendant would be physically unable to engage in the same predatory conduct he engaged in before, let alone the relatively sedentary offenses of possession and distribution of child pornography.  Though Defendant argues he would remain at home and pose no danger to the community, much of the conduct attributed to Defendant for which he is presently incarcerated occurred from the comfort of his home.  He possessed, distributed and produced child pornography at, from and on his ranch.  GPS monitoring would not prevent the recommission of similar crimes in the future.  Indeed, other district courts have concluded similarly situated defendants should not be released to home confinement because of the risk of reoffending.  *See, e.g.*, *United States v. Mitchell*, 2020 WL 2770070, at *3 (E.D. Cal. May 28, 2020) (denying § 3582 motion for 72-year old defendant with history of lung disease and high blood pressure, who had been convicted of receiving child pornography); *United States v. Feiling*, No. 3:19-CR-112 (DJN), 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020) (denying motion for defendant convicted of possession of child pornography in part because he committed the offense at home, "meaning a term of home confinement would be less likely to protect the public); *United States v. Miezin*, No. 1:13-CR-15, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for defendant convicted of receiving and distributing child pornography in part because "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct.").

17-CR-145 DMS

1    Finally, Defendant contends he would not be a danger to society because he has been

2    a model prisoner with no disciplinary infractions and the BOP has classified him as "having

3    the 'MINIMUM' recidivism risk level." (Def's Mot. at 20, App:8.)  However, Defendant's

4    crimes relate to child pornography.  "There are no children in prison; thus [Defendant's]

5    conduct while incarcerated in no way establishes that he is no longer a danger to the

6    community, especially its young and vulnerable members." *United States v. Asmodeo*,

7    2020 WL 3268530, at *3 (S.D.N.Y. June 17, 2020).  The Court also declines to ascribe any

8    significance to the BOP's "minimum" recidivism risk level classification.  Defendant

9    mentions the classification in one sentence without further explanation.  The classification

10   assessment is dated November 4, 2019, shortly after Defendant was re-sentenced and

11   before sex offender treatment initiated.  Given that a sentence of home confinement would

12   return Defendant to the place where he committed his earlier crimes,  Defendant fails to

13   meet his burden that he would no longer be a danger to others or the community.

14       3.   Section 3553(a) Factors

15       Section 3553(a) provides that the sentencing court must impose a sentence that is

16   "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense,

17   to promote respect for law, and to provide just punishment for the offense; (B) to afford

18   adequate deterrence to criminal conduct; (C) to protect the public from further crimes of

19   the defendant; and (D) to provide the defendant with needed educational or vocational

20   training, medical care, or other correctional treatment in the most effective manner[.]"  18

21   U.S.C. § 3553(a)(2)(A)-(D).  The Court also must consider, among other factors, "the

22   nature and circumstances of the offense and the history and characteristics of the

23   defendant" and the "need to avoid unwarranted sentence disparities among defendants with

24   similar records who have been found guilty of similar conduct."

25       These factors weigh against releasing Defendant.  Many of the factors overlap with

26   the § 3142(g) factors discussed above, including the seriousness of the offense, protection

27   of the public, and history and characteristics of the defendant.  Because those factors were

28   discussed above, they will not be addressed here.

17-CR-145 DMS

The need for punishment and promoting respect for law are important considerations under § 3553.  Defendant was sentenced to 168 months and has served fewer than two years of his sentence.  "To so dramatically reduce the sentence in light of the current public health crisis would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law." *See Asmodeo*, 2020 WL 3268530, at *3 (denying motion for compassionate release where defendant was sentenced to 180 months for sexual exploitation of children and granting release would cut defendant's sentence by "nearly two-thirds").  Although Defendant contends a sentence of home confinement is not the same as release, (Def's Mot. at 21), Defendant has only served a "small fraction" of his sentence and has not yet undergone sex offender treatment. (Opp'n at 7.)  Providing Defendant with "needed … correctional treatment" serves the important goal of rehabilitation.  Accordingly, Defendant fails to meet his burden to demonstrate that the § 3553(a) factors weigh in favor of sentence modification.

## III.

## CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion is denied.

**IT IS SO ORDERED.**


Dated:  June 30, 2020

Hon. Dana M. Sabraw
United States District Judge

17-CR-145 DMS