# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                               Plaintiff,<br>v.<br>CHRISTIAN CLEWS,<br>                               Defendant. | Case No.: 17-cr-00145 DMS<br><br>**ORDER DENYING MOTION FOR SENTENCE MODIFICATION UNDER 18 U.S.C. § 3582(C)** |

      Pending before the Court is Defendant Christian Clews's *Pro Se* Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). The government opposes his motion. For the reasons stated below, the Court denies Defendant's motion.

## I.
## BACKGROUND

      Defendant is currently incarcerated at Federal Correctional Institution Seagoville ("FCI Seagoville"), following his convictions for distribution of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and possession of images of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). (Judgment, ECF No. 104.) On June 6, 2019, the Court sentenced Defendant to 168 months in custody, followed by 20 years of supervised release. (ECF Nos. 156, 158.) Defendant appealed his sentence to the Ninth Circuit, but later filed, and was granted, a motion for

voluntary dismissal of appeal. (ECF Nos. 162, 188.) On December 28, 2020, Defendant filed a motion to vacate under 28 U.S.C § 2255, which the Court denied. (ECF No. 190, 201, 209.) On June 25, 2021, while his motion to vacate was still pending, Defendant filed the motion for compassionate release that is presently before the Court. Defendant has separately appealed the Court's order denying his motion to vacate, and his appeal is pending. (ECF No. 214.)

The present motion for compassionate release is not Defendant's first such motion before the Court. On June 1, 2020, Defendant filed a motion for sentencing modification pursuant to the same section. (ECF No. 174.) At the time, Defendant requested compassionate release based on an elevated risk for COVID-19 complications due to various medical conditions, including chronic obstructive pulmonary disease, hypertension, and type 2 diabetes. The government opposed, and the Court denied, Defendant's motion. (ECF No. 175, 180.)

Defendant's projected release date is December 31, 2029. He filed his present motion for compassionate release on June 25, 2021, claiming to have suffered infection with COVID-19 "in [the] recent months" prior to preparing his motion. (ECF No. 174 at 5.) The Court accepted Defendant's motion on April 4, 2022. Curiously, the Bureau of Prisons ("BOP") medical records before the Court indicate that Defendant was diagnosed with COVID-19 only in the months following, not preceding, the date of Defendant's signature on his petition. He tested positive on January 19, 2022, and denied any symptoms. (ECF No. 210, Ex. 1.) The Court recognizes that a situation is possible in which Defendant experienced an infection with COVID-19 prior to his compassionate release motion, which went undocumented. As a result, the Court will not discredit Defendant's claims on account of this timing alone. However, when compared against Defendant's initial claims of being at high risk for COVID-19 complications, his recent medical records are noteworthy for various reasons the Court will address below.

Defendant claims to suffer from "debilitating cardio and respiratory symptoms" and an "inability to mobilize without pulmonary and respiratory obstructions," as a result of

"long-COVID."  (ECF No. 204 at 5, 12.)  More specifically, in his motion, Defendant claimed to experience the following: "labored breathing, shortness of breath, heart palpatations [*sic*], tachacardia [*sic*], irregular heart beat [*sic*], foggy condition, disorientation, memory loss, sleep deprivation due to breathing issues, severe allergies, and fatigue," and intensification of preexisting asthma.  (ECF No. 204 at 7, 14.)  In his reply brief, Defendant referenced additional side effects including dizziness, brain fog, muscle and joint pain, and scarred lungs.  (ECF No. 220 at 1.)

Defendant claims the BOP is "unable to properly treat" his conditions, that reinfection with the virus presents "a grave risk of death," and "unless his is self-quarantined at home, [he] will likely succumb to this more deadly virus in light of an assured respiratory failure based on his current disability."  (ECF No. 204 at 7, 14; ECF No. 220 at 3, 6.)  As a result, Defendant requests compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The government opposes Defendant's motion, arguing that Defendant's medical conditions do not rise to the threshold of "extraordinary and compelling" reasons which justify a sentence reduction and stating that Defendant has already recovered from COVID-19 infection without significant symptoms or health complications.  (ECF No. 210 at 12-23.)  The government also argues that sentencing factors under 18 U.S.C. § 3553(a) do not support release.  (ECF No. 210 at 23-25.)

## II.

## DISCUSSION

In general, a court may not modify a sentence of incarceration once it has been imposed, unless expressly permitted by statute or Rule 35 of the Federal Rules of Criminal Procedure.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  The First Step Act ("FSA") is such a statute.  *See* Pub L. 115-391, 132 Stat. 5194, 5239 (2018).  Among the criminal justice reforms implemented by the FSA, Congress amended 18 U.S.C. § 3582(c)(1)(A) to allow the defendant to move the district court for compassionate release after exhausting the BOP process.

Section 3582(c) of Title 18 of the United States Code provides that a court may not modify a term of imprisonment except "upon motion of Director of the Bureau of Prisons, or upon motion of the defendant." A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to act or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Administrative exhaustion is a prerequisite to filing the motion in district court, and "[e]xhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." *United States v. Mondaca*, No. 89-cr-0655-DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020) (internal quotation marks and citations omitted). Here, Defendant emailed a request for compassionate release to the warden of FCI Seagoville on February 4, 2021. (ECF No. 65, Addendum B). More than thirty days have passed from the date of his request. Accordingly, the Court addresses the merits of Defendant's motion.

The FSA allows a district court to modify a sentence and grant compassionate release if it finds "extraordinary and compelling reasons" warrant such a sentence reduction and the reduction complies with the sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Further, the reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The relevant policy statement, United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13, requires the court to find the defendant "is not a danger to the safety of any other person or to the community."[1] Defendant contends he meets the foregoing criteria. As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

---

[1] Even if U.S.S.G. § 1B1.13 does not apply to district courts' consideration of compassionate release motions, the court must nonetheless consider dangerousness as part of the § 3553(a) factors. *See* 18 U.S.C. § 3553(a)(2)(C) (sentence must be sufficient to "protect the public from further crimes of the defendant").

District courts have discretion to determine "extraordinary and compelling reasons" for the purpose of compassionate release because U.S.S.G. § 1B1.13 is not binding on district courts. *See United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). Although not binding, U.S.S.G. § 1B1.13 may inform a district court's decision as to whether certain conditions are extraordinary and compelling. *See id.* The Sentencing Guidelines provide that extraordinary and compelling reasons may exist for compassionate release where a defendant suffers from, among other conditions, "a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. 1(A)(ii).

1. Extraordinary and Compelling Reasons

Defendant claims he is eligible for compassionate release because he suffers from "dysautonomia" or "long-COVID," alongside other medical conditions including, "T-2 Diabetes, Asthma, Scar[r]ing on Lungs, Hypertension, [and] Obesity," that make him particularly susceptible to new COVID-19 variants in a custodial setting. He also claims his preexisting conditions cause his incarceration to constitute "cruel and unusual" punishment in violation of the Eighth Amendment. (ECF No. 204 at 1). However, Defendant fails to credibly support these arguments, and does not establish "extraordinary and compelling reasons" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).

First, Defendant has recovered from COVID-19, perhaps multiple times, and does not present any specific evidence to suggest that the self-care or treatment he receives in custody is inadequate. In his initial petition, Defendant included a section titled, "Bureau of Prison Failed Protocols." (ECF No. 204 at 18). In this section, Defendant describes the physical configuration of the cells within FCI Seagoville and his concern regarding an inability to effectively socially distance. (*Id.*) He cites to his "severe debilitation resulting from dysautonomia, including cardio and respiratory challenges" and a desire to socially

distance "upon a return to his home and ranch where he may control all social visits, distancing, and self-quarantine." (*Id.*)

Defendant describes having been reinfected with COVID-19 in March 2022 and claims to experience "exacerbated" symptoms as a result. (ECF No. 210 at 3). He also claims to have "forwarded a multitude of requests on September 9, 2021, and on February 23, 2022 seeking immediate medical attention due to his inability to breath [*sic*] or navigate the compound from lung scaring [*sic*] and heart arythmia [*sic*], and all to no avail as such requests within the prison continue to go unanswered." *Id*. Defendant provided the Court his communications to the warden of FCI Seagoville dated February 4, 2021, February 19, 2021, and March 11, 2021. ("Addendum A," ECF No. 204 at 27-29.) In these communications, Defendant expressed complaints to the warden, which the Court will accept as his request for compassionate release. Defendant communicated his concerns about a lack of social distancing and his breathing, among other symptoms normally associated with COVID-19, such as coughing and chest pain. (*Id.*) Additionally, Defendant states that, in the weeks preceding filing his reply brief, he placed requests with the medical department to "recharge his asthma Albuterol inhaler," which he attests have gone unanswered. (ECF No. 210 at 3). Defendant has not provided any documentary evidence to corroborate his account of his more recent accounts of infection and unanswered medical requests.

To the contrary, the BOP medical records before the Court do not support Defendant's claims of debilitating dysautonomia. They do not show severe complications or side effects from infection or reinfection with COVID-19. Defendant claimed to have ongoing "complications from COVID 19" during a clinical encounter on February 22, 2022, but cardiovascular and pulmonary notes in the corresponding BOP Health Services Clinical Encounter Report indicated "Within Normal Limits," and the clinician reported "no significant /abnormal findings." (ECF No. 210, Ex. 3.) The medical records Defendant himself appended to his petition support his claims of chronic back pain, asthma, and hypertension, but do not clearly depict an individual suffering from "long covid." More

importantly, Defendant's chronic conditions are being professionally managed by the BOP with prescription medication and clinical attention. (*See id.*)

Defendant claims he was reinfected with COVID-19 in March 2022 and that this reinfection "exacerbated" his symptoms. (ECF No. 210 at 3.) Yet, BOP medical records for a clinical visit on March 24, 2022, do not contain any reference to a COVID-19 infection. (ECF No. 210, Ex 4.) Defendant complained only of chronic lower back pain and the clinician prescribed medication. (*Id.*) At this visit, the clinician noted that pulmonary and cardiovascular observations again appeared "Within Normal Limits," and his oxygen saturation was 97%. (*Id.*) The Court credits that Defendant's preexisting back pain from "multiple back injuries and surgical intervention" may credibly contribute to a certain level of difficulty mobilizing within the prison compound, but his medical records do not attribute the difficulty to COVID-19. (*Id.*)

According to the exhibits provided to the Court, the last clinical encounter during which Defendant claimed to have specific COVID-related symptoms, such as shortness of breath and fatigue with exertion was on September 10, 2021. (ECF No. 210, Ex. 6.) During this examination, Defendant reported "post COVID symptoms like SOB [shortness of breath] and fatigue with exertion," but possessed an inhaler that "he hardly uses" and was "not in respiratory distress." (ECF No. 210, Ex. 6.) Defendant claims he requested the "recharging" of his inhaler in the "recent weeks" preceding the filing of his reply brief, but he has not submitted records to the Court to corroborate such a request or to demonstrate such a request was not met. (ECF No. 220 at 3.)

The Court agrees with the government that Defendant's medical records also do not show that his ability to provide self-care in custody is substantially diminished or has been comprised by his chronic conditions. (ECF No. 210 at 14). Defendant claims that "the prison system and its current medical provider are unable to properly treat [his] condition" or "support a proper treatment plan." (ECF No. 204 at 7). He further argues that "having to remain at the behest of prison-related duties and obligations," such as "a need to navigate around a multi-acre prison compound with limited respiratory ability," constitutes cruel

7

17-cr-00145 DMS

and unusual punishment when a prisoner suffers from "long covid." (ECF No. 204 at 7). In support of these claims, Defendant generally points to cases that are either dissimilar or in which compassionate release was denied. Notably, in *United States v. Ayon-Nunez*, a defendant requested compassionate release based on purported risks of COVID-19 in light of his elderly status, obesity, and hypertension. *Ayon-Nunez*, 2020 WL 6526277 (E.D. Cal. Nov. 5, 2020). In *Ayon-Nunez*, the defendant had recovered from a severe case of COVID-19, but medical records indicated a return to baseline health and the adequate management of his chronic conditions in prison. Consequently, his request was denied.

In the same way, Defendant's recent medical records neither support his claim that he suffers from "long COVID" nor illustrate chronic conditions that are extraordinary or compelling to warrant his release. He has not provided additional information or evidence about the current state of his health or the deficiency of his treatment in custody. Defendant may suffer from chronic medical conditions, but he has not shown that they are incapable of being managed in incarceration. Furthermore, chronic medical conditions alone do not constitute extraordinary and compelling circumstances warranting compassionate release. *See, e.g., United States v. Barrett*, No. 16-CR-1831-BEN, 2022 WL 2079314, at *2 (S.D. Cal. June 9, 2022) (denying motion for compassionate release where defendant's chronic asthma and hypertension were adequately managed by an albuterol inhaler and blood pressure medication).

Finally, Defendant claims he suffers from severe allergies "which preclude[] him from eligibility for the COVID-19 vaccine." (ECF No. 204 at 14.) The decision to accept or refuse a vaccination is the Defendant's. However, district courts have overwhelmingly determined that the refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion, regardless of the reasons underlying the decision. *See United States v. Sawyers*, No. CR 15-00070-RSWL-1, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021), *appeal dismissed*, No. 21-50157, 2021 WL 6196971 (9th Cir. Oct. 18, 2021) (citations omitted). The Court had previously considered Defendant's petition for compassionate release during a stage in the pandemic when COVID-19 vaccines were not

available and credited that he suffered from chronic medical conditions. The Court similarly credits Defendant's claim of allergies, but his unvaccinated status does not raise his request to meet the threshold of "extraordinary and compelling."

Even setting aside the lack of evidentiary support for Defendant's claims and his vaccination status, FCI Seagoville reports 3 inmates and 5 staff who are currently infected with COVID-19, as of August 8, 2022.[2] The Court is sympathetic to the hardships of incarceration during the COVID-19 pandemic, but the threat of infection at FCI Seagoville presently remains low and custodial conditions during the pandemic alone are unlikely to constitute extraordinary and compelling reasons for compassionate relief.

2. <u>§ 3553 Factors</u>

The Court also considers sentencing factors under 18 U.S.C. § 3553(a) to determine whether a reduction in sentence is warranted. Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary … (A) to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Id.* § 3553(a)(2)(A)–(D). The Court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(1), (6).

The § 3553(a) factors also weigh against release. Defendant was convicted of the distribution and possession of images of minors engaged in sexually explicit conduct. Defendant collected and possessed several thousand images of child pornography spanning

---

[2] Available at https://www.bop.gov/coronavirus/.

over two decades, dating back to 2001.[3] He distributed child pornography depicting children being subjected to bondage, sadism, and bestiality, via his cellular phone. Defendant also produced pornographic videos with a minor on one occasion and with an adult with her two-year-old daughter present in the room on another. (ECF No. 210 at 25.)

Defendant has now served over four years in incarceration. However, rather than expressing remorse or taking responsibility for his crimes, Defendant disputes the number of images he possessed while matter-of-factly conceding that the number exceeds 15,000. (ECF No. 220 at 4.) He also disputes the characterization of one minor as a "victim" or "child" because she was "two days shy of her 18th birthday," the locations of the videos he produced, and whether one of those videos was spontaneous or planned. (ECF No. 220 at 5.) Defendant requests release to his ranch should the Court grant his present request for compassionate release. Regardless of whether Defendant committed his crimes on or near his ranch, the Court respectfully declines.

Defendant additionally contends that he does not pose any risk or danger to society. (ECF No. 204 at 6). In part, he points to his classification within the "Minimum" percentile for BOP's "Overall Male Pattern Risk Level." (ECF No 204 at 3; "Addendum A," ECF No. 204 at 24-25.) He argues that he "has displayed no history of violence," "has shown no pattern of violence or risk of danger to the public while incarcerated," and "established a proven record of compliance within the [BOP]." (ECF No. 204 at 15.) The classification assessment is dated June 23, 2020. Defendant does not provide an adequate explanation of its relevance, and the Court declines to ascribe the classification any significance.

---

[3] The total number of contraband images was in dispute at sentencing and remains in dispute presently. The total image count reported to the Court during Defendant's initial sentencing hearing was 47,266, according to the computer forensics report in this case. (ECF 152 at 18.) Defendant maintains a more conservative count of 15,035, according to his reply brief. (ECF No. 220 at 3). Regardless, Defendant did not previously and does not presently dispute that he possessed well over 600 images of child pornography, and this stipulation supported the five-level upward adjustment under USSG §2G2.2(b)(7)(D) applied to his sentence.

As the Court has previously explained, Defendant's crimes relate to child pornography. (*See* ECF No. 180 at 9.) Defendant appears to have maintained a minimal, though not spotless, disciplinary record while in custody. However, his disciplinary record alone neither negates his criminal history nor guarantees that the public is protected from his committing additional crimes. (*See* ECF No. 210, Ex 5.) "There are no children in prison; thus [Defendant's] conduct while incarcerated in no way establishes that he is no longer a danger to the community, especially its young and vulnerable members." *United States v. Asmodeo*, 2020 WL 3268530, at *3 (S.D.N.Y. June 17, 2020). Furthermore, the Court rejects Defendant's arguments that he no longer poses a danger to the community because sex offense computer crimes "qualify as behavioral rather than criminal" and that sex offense violations are similar to "penalty infractions such as a driving infraction, failure to program, or travel issues." (ECF No. 145 at 17.) Defendant committed a serious crime. He does not present adequate mitigating factors to outweigh the aggravating factors to warrant his release.

Lastly, the government correctly points out that this Court has repeatedly recognized that even when "extraordinary and compelling reasons" are present, which is not the case here, the § 3553(a) factors do not support a sentence reduction when the defendant has not served a meaningful portion of the sentence ordered by the Court. (ECF No. 210 at 23.) Defendant has only served approximately one-third of his 168-month sentence and a reduction to time served would not adequately reflect the seriousness of the offense. "To so dramatically reduce [Defendant's] sentence … would neither be just nor promote respect for the law; if anything, it would promote disrespect for the law." *United States v. Asmodeo*, 2020 WL 3268530, at *3 (S.D.N.Y. June 17, 2020) (denying motion for compassionate release where defendant was sentenced to 180 months for sexual exploitation of children and granting release would cut defendant's sentence by nearly two-thirds).

In sum, the Court credits Defendant's claim of chronic medical conditions, but Defendant has not met his burden to demonstrate that his health, particularly as a result of "long COVID," rises to the level of "extraordinary and compelling reasons" which warrant

release.  Even assuming Defendant had met this burden, the 18 U.S.C. § 3553(a) factors do not support his release.

### III.

### CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is respectfully denied.

**IT IS SO ORDERED**.

Dated:  August 8, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court